

# ATTORNEY GENERAL OF TEXAS

## GREG ABBOTT

January 27, 2005

The Honorable Robert E. Talton
Chair, House Committee on Urban Affairs
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78711-2910

Opinion No. GA-0300

Re: Whether payment for accumulated vacation time, paid as salary under an employment contract, is creditable compensation for purposes of determining Teacher Retirement System benefits (RQ-0251-GA)

Dear Representative Talton:

You ask whether payment for accumulated vacation time, paid as salary under an employment contract, is creditable compensation for purposes of determining Teacher Retirement System ("TRS") benefits.[1]

The Texas Constitution requires the legislature to "establish by law a Teacher Retirement System of Texas to provide benefits for persons employed in the public schools, colleges, and universities supported wholly or partly by the state." TEX. CONST. art. XVI, § 67(b)(1). TRS is established and governed by Government Code, title 8, subtitle C. See TEX. GOV'T CODE ANN. tit. 8, subtit. C, chs. 821-30 (Vernon 2004). The TRS board of trustees is responsible for the system's general administration and may adopt rules for membership eligibility, funds administration, and other matters. See id. §§ 825.101-.102.

A TRS member's compensation level determines the level of benefits to which he or she will be entitled. For example, the standard service retirement benefit annuity "is an amount computed on the basis of the member's *average annual compensation for the three years of service*, whether or not consecutive, *in which the member received the highest annual compensation*, times 2.3 percent for each year of service credit in the retirement system." Id. § 824.203(a) (emphasis added). As a result, payments that increase a member's compensation during the member's three years of highest annual compensation may significantly increase the member's benefits.

Section 821.001(4) defines "annual compensation" for purposes of subtitle C to mean "the compensation to a member of the retirement system for service during a school year that is reportable

---

[1]See Letter from Honorable Robert E. Talton, Chair, House Committee on Urban Affairs, Texas House of Representatives, to Honorable Greg Abbott, Texas Attorney General (July 29, 2004) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

and subject to contributions as provided by Section 822.201." *Id.* § 821.001(4). Section 822.201 governs what compensation may be credited in benefit computations, *see id.* § 822.201(a) ("compensation subject to report and deduction for member contributions and to credit in benefit computations is . . . "), establishing the compensation that you and TRS refer to as "creditable compensation."[2]

Generally, section 822.201(a) defines as creditable compensation "a member's salary and wages for service." *Id.* The phrase "salary and wages" is defined to mean "normal periodic payments of money for service the right to which accrues on a regular basis in proportion to the service performed," *id.* § 822.201(b)(1), and other amounts not relevant here, *see id.* § 822.201(b)(2)-(8). As you point out, section 822.201(c)(3) expressly disqualifies certain payments as creditable compensation, including payments for accumulated vacation time: "Excluded from salary and wages are . . . payments for unused vacation or sick leave." *Id.* § 822.201(c)(3).

A TRS rule, section 25.21(b), mirrors these provisions. The rule explains that

> [s]ome payments made by an employer to a member are not salary or wages, even though the payments may be otherwise considered as compensation under the employment contract or federal tax laws. In general salary and wages creditable and subject to deposit are those types of monetary compensation which:
>
> (1) are earned or accrue proportionally as the work is performed, so that a member terminating employment between pay periods is entitled to a proportional amount of the compensation based on either length of employment or amount of work performed;
>
> (2) are paid or payable at fixed intervals, generally at the end of each pay period; and
>
> (3) are not specifically excluded under subsection (d) of this section.

34 TEX. ADMIN. CODE § 25.21(b) (2004). Subsection (d)(3) of the rule specifically excludes from annual compensation "payments for accrued sick leave or vacation, except that continued payments of normal compensation when vacation or sick leave is actually taken by an employee will be included in annual compensation to the extent otherwise permitted by this section." *Id.* § 25.21(d)(3). The rule also states that, in determining creditable compensation, TRS may rely on employer certifications or may conduct an investigation to assess whether ineligible compensation has been reported. *See id.* § 25.21(f).

---

[2]*See* Request Letter, *supra* note 1; Brief from Conni H. Brennan, General Counsel, Teacher Retirement System of Texas, to Nancy S. Fuller, Chair, Opinion Committee, Office of the Attorney General at 3, 10-11 (on file with Opinion Committee) [hereinafter TRS Brief].

Government Code section 822.201's plain language resolves your question. Even if a payment for accumulated vacation time is paid as salary under an employment contract, it is not creditable compensation for purposes of determining TRS benefits. Payments for accumulated vacation time earned in past years are not "normal periodic payments of money *for service* the right to which accrues on a regular basis *in proportion to the service performed*," TEX. GOV'T CODE ANN. § 822.201(b)(1) (Vernon 2004) (emphasis added), and thus do not constitute salary and wages under section 822.201(a). Moreover, section 822.201(c)(3) expressly excludes payments for unused vacation from salary and wages. *See id.* § 822.201(c)(3). The parties' agreement in an employment contract that certain payments are creditable compensation for TRS purposes does not overcome contrary state law. *Cf.* Tex. Att'y Gen. Op. No. JM-672 (1987); Tex. Att'y Gen. ORD-514 (1988) (a governmental body's agreement with a private party to keep information confidential does not overcome Public Information Act disclosure requirements).

We gather that there has been some confusion regarding this issue arising from TRS's repeal in 2001 of an administrative rule that established a presumption regarding conversion of noncreditable compensation to salary, former section 25.30. *See* 26 Tex. Reg. 6279 (2001), *adopted* 26 Tex. Reg. 8544 (2001) (repealing former 34 TEX. ADMIN. CODE § 25.30).

TRS adopted section 25.30 pursuant to section 825.110 of the Government Code, which in pertinent part authorizes the TRS board of trustees to adopt rules "to exclude from annual compensation all or part of salary and wages in the final years of a member's employment that reasonably can be presumed to have been derived from a conversion of fringe benefits, maintenance, or other payments not includable in annual compensation to salary and wages." TEX. GOV'T CODE ANN. § 825.110 (Vernon 2004). The rule provided that TRS would "exclude from annual compensation any amounts converted into salary and wages from noncreditable compensation during the last five creditable school years of employment before retirement." 22 Tex. Reg. 6843 (1997), *adopted* 22 Tex. Reg. 9256 (1997) (codified at 34 TEX. ADMIN. CODE § 25.30(a) (repealed 2001)). The rule established that "conversion of noncreditable compensation to creditable salary and wages occurs when noncreditable compensation is reduced or eliminated and is replaced by creditable salary and wages" and provided that "[a] conversion should normally be presumed when noncreditable compensation provided to a member in a school year is not provided in the immediately following school year and the member's creditable salary and wages for the subsequent year exceeds that of the previous year in which the noncreditable compensation was provided." 19 Tex. Reg. 3565 (1994), *adopted* 19 Tex. Reg. 9183 (1994) (codified at 34 TEX. ADMIN. CODE § 25.30(d) (repealed 2001)). To overcome the presumption, a member had to submit documentary evidence to TRS that "clearly and convincingly" proved that "the difference was not converted to salary and wages." *Id.* The rule required employers to certify the amount of noncreditable salary that had been converted to salary.[3]

---

[3]*See* 19 Tex. Reg. 3565 (1994), *adopted* 19 Tex. Reg. 9183 (1994) (codified at 34 TEX. ADMIN. CODE § 25.30(c) (repealed 2001)) ("After a member applies for retirement, each employer of the member during any of the member's best three year's average compensation will, upon request by TRS, certify the amount, if any, of the member's noncreditable compensation previously provided by the employer which was converted into TRS creditable salary and wages paid by the employer during each of the last five creditable school years of the member's employment immediately before the member's anticipated retirement date.").

The repealed rule established a presumption that certain compensation was noncreditable. TRS explains that the rule was unworkable because the presumption was difficult to apply and few employers reported that employees' noncreditable compensation had been converted. *See* TRS Brief, *supra* note 2, at 11. We agree with TRS that the rule's repeal has no bearing on whether payments for accumulated vacation time constitute creditable compensation. First, as TRS points out, the rule's repeal did not change the statutory definition of salary and wages, which expressly excludes from creditable compensation payments for accumulated vacation time. *See* TEX. GOV'T CODE ANN. § 822.201(b), (c)(3) (Vernon 2004). In addition, after section 25.30's repeal, TRS rules have continued to expressly exclude from annual compensation "payments for accrued sick leave or vacation, except that continued payments of normal compensation when vacation or sick leave is actually taken by an employee will be included in annual compensation to the extent otherwise permitted by this section." 34 TEX. ADMIN. CODE § 25.21(d)(3) (2004). And the TRS Benefits Handbook clearly informs members that noncreditable compensation, including payments for unused vacation leave, cannot be used to determine TRS benefits.[4]

Finally, this office has received a brief suggesting that section 825.110 of the Government Code (1) recognizes conversion of noncreditable compensation to salary "as a permitted activity"[5] and (2) limits TRS's authority to determine whether a member's reported compensation includes noncreditable compensation, such as payments for accumulated vacation time.[6] Section 825.110 authorizes but does not require TRS to adopt rules establishing a presumption that certain salary has been converted from noncreditable compensation. *See* TEX. GOV'T CODE ANN. § 825.110 (Vernon 2004) (the TRS board of trustees "*may* adopt rules to exclude from annual compensation all or part of salary and wages in the final years of a member's employment that reasonably can be presumed to have been derived from a conversion of fringe benefits, maintenance, or other payments not includable in annual compensation to salary and wages") (emphasis added); *see also id.* § 311.016(1) (Vernon 1998) ("unless the context in which the word or phrase appears necessarily requires a different construction or unless a different construction is expressly provided by statute[,] '[m]ay' creates discretionary authority or grants permission or a power") (Code Construction Act). Section 825.011 does not recognize conversion of noncreditable compensation to salary as a permitted activity but rather authorizes TRS to adopt a presumption as an administrative tool to identify amounts that may have been improperly reported as creditable compensation. This discretionary authority to adopt an administrative presumption does not establish a reverse presumption that, in the absence of such an administrative presumption, all reported salary must be treated as creditable compensation. Nor does this authority to adopt rules establishing a general presumption preclude TRS from examining particular salary payments to determine whether they are creditable or noncreditable.

---

[4]*See* TEACHER RETIREMENT SYSTEM OF TEXAS, TRS BENEFITS HANDBOOK 7 (2004), *available at* www.trs.state .tx.us/Publications/benefitshandbook.pdf.

[5]Brief from Robert A. Schulman, Feldman & Rogers, L.L.P., to Nancy S. Fuller, Chair, Opinion Committee, Office of the Attorney General at 6 (Oct. 11, 2004) (on file with Opinion Committee).

[6]*Id.* at 4-6.

In sum, under the governing statute and TRS rule, a payment for accumulated vacation time is not creditable compensation for purposes of determining TRS benefits. Whether a particular payment under a contract is noncreditable compensation, such as a payment for accumulated vacation time, or creditable compensation, such as salary and wages for services performed within the pay period, is a fact matter for TRS to determine, *see* 34 TEX. ADMIN. CODE § 25.21(f) (2004) (stating that TRS may conduct an investigation to assess whether ineligible compensation has been reported), and is beyond the purview of an attorney general opinion, *see* Tex. Att'y Gen. Op. Nos. GA-0128 (2003) at 5 (a question requiring resolution of particular facts is "not one in which this office ordinarily engages in the opinion process"); GA-0106 (2003) at 7 ("This office cannot find facts or resolve fact questions in an attorney general opinion."); *see also* Tex. Att'y Gen. Op. No. GA-0078 (2003) at 2 (stating that this office does not construe particular contracts).

## S U M M A R Y

A payment for accumulated vacation time, paid as salary under an employment contract, is not creditable compensation for purposes of determining Teacher Retirement System benefits.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee